34993.   TRIBBLE *v*. THE STATE.

DECIDED JANUARY 8, 1954.

594

*Harris & Gower,* for plaintiff in error.

*Thomas B. Branch, Jr., Victor K. Meador,* amicus curiae.

*Paul Webb, Solicitor-General, C. O. Murphy,* contra.

TOWNSEND, J. ■ Code (Ann. Supp.) § 57-116 provides in part as follows: "Any person, natural or artificial, in this State, lending money to be paid back in monthly, quarterly, or yearly

installments, may charge interest thereon at 6% per annum or less for the entire period of the loan, aggregating the principal and interest for the entire period of the loan, and dividing the same into monthly, quarterly or yearly installments, and may take security therefor . . . and such contract shall not be held usurious." This section is in derogation of Code § 57-101, forbidding the charging of interest at a rate greater than 8% per annum, and must be strictly construed. *National Bondholders Corp.* v. *Kelly*, 185 *Ga.* 788 (196 S. E. 411) ; *Garner* v. *Sisson Properties*, 198 *Ga.* 203, 205 (31 S. E. 2d 400) ; *Graham* v. *Lynch*, 206 *Ga.* 301 (57 S. E. 2d 86). The section provides that instalments payable on contracts coming within its provisions may be made monthly, quarterly, or yearly; it does not provide for short-term loans the instalments under which are to be repaid weekly or semi-monthly. Interest on the loans in question here, therefore, could not properly be figured under this section. Since the borrower has the use of the full $50 loan only during the first two weeks of the three-month or four-month life of the loan, and since he makes equal payments on the principal sum biweekly thereafter, it is obvious that, unless Code § 57-116 applies, the rate of interest on the balances actually held and used by the borrower is greater than 8% per annum and is therefore usurious. By requiring instalment payments at less than monthly intervals, the lender failed to place himself within the provisions of this section, and the interest charged is, accordingly, usurious. Since the evidence authorized the finding that the defendant received sums as interest in excess of 8% per annum, and since it was stipulated that he did not have a license as required by Code § 25-301 to engage in the small-loan business, he was properly found guilty under count 1 of the indictment.

■ Code § 57-117 provides as follows: "No person, company, or corporation shall reserve, charge, or take for any loan or advance of money, or forbearance to enforce the collection of any sum of money, any rate of interest greater than five per centum per month, either directly or indirectly, by way of commission for advances, discount, exchange, the purchase of salary or wages, by notarial or other fees, or by any contract, contrivance, or device whatever; save and except only that regularly licensed pawnbrokers, where personal property is taken into their actual

physical possession and stored by them, may charge, in addition to said rate of interest, not exceeding 25 cents at the time said property is first taken possession of by them for the storage of said property. This section shall not be construed as repealing or impairing the usury laws now existing, but as being cumulative thereof." The prohibition therein expressed is against the obtaining of additional amounts as interest profit "either directly or indirectly . . . by notarial or other fees, or by any contract, contrivance, or device whatsoever." This State has consistently recognized that a lender may demand collateral security, that a life-insurance policy may be collateral security, and that such a policy, when assigned in good faith, does not render the transaction usurious merely because of the fact that it is taken out with the lender which is itself an insurance company, provided it does not appear that the premium charge was excessive or that the borrower was compelled as a condition precedent to the loan to make a "tie-in" purchase of the insurance with the company advancing the loan. *Sledd* v. *Pilot Life Insurance Co.*, 52 *Ga. App.* 326 (183 S. E. 199); *Exchange Bank of Macon* v. *Loh*, 104 *Ga.* 446 (31 S. E. 459, 44 L. R. A. 372); *Peebles* v. *State*, 87 *Ga. App.* 649 (75 S. E. 2d 35).

Our courts have also consistently recognized that, where the profit received by the lender, by whatever name it may be called, and whether lawful on its face or not, is in reality a contrivance or device to obtain an amount greater than lawful interest, and is made with intent to violate the usury laws, the transaction is illegal, and that the name by which it is called is altogether immaterial. *Bailey* v. *Newberry*, 52 *Ga. App.* 693 (184 S. E. 357); *McDaniel* v. *Bank of Bethlehem*, 22 *Ga. App.* 223 (95 S. E. 724); *Bank of Lumpkin* v. *Farmers' State Bank*, 161 *Ga.* 801 (132 S. E. 221); *Fishburne* v. *Hartsfield Loan & Savings Co.*, 38 *Ga. App.* 784 (145 S. E. 495); *Knight* v. *State*, 64 *Ga. App.* 693 (14 S. E. 2d 225); *Peoples Bank* v. *Mayo*, 61 *Ga. App.* 877 (2) (8 S. E. 2d 405). As stated in *Southern Loan &c. Co.* v. *State*, 68 *Ga. App.* 75 (22 S. E. 2d 108): "In determining whether a contract is usurious the substance of the transaction will be critically examined, for the name by which the transaction is called is wholly immaterial where it appears that its foundation was the loan of money; and the question

whether one intended to exact usury under cover of a contrivance or device, or whether the charge alleged in the contract was a bona fide one for value received, is for the jury to determine." Justice Bleckley, in *Pope* v. *Marshall*, 78 *Ga.* 635, 640 (4 S. E. 116), perceptively stated that "the theory that a contract will be usurious or not according to the kind of paper bag it is put up in, or according to the more or less ingenious phrases made use of in negotiating it, is altogether erroneous. The law intends that a search for usury shall penetrate to the substance."

The practice of requiring a "tie-in" sale of insurance or some other commodity which the borrower does not need or desire as a condition precedent to a loan has frequently been held usurious in other States. See Carter *v.* Life Insurance Co. of Virginia, 122 N. C. 338 (1) (30 S. E. 341); Miller *v.* Life Insurance Co. of Virginia, 118 N. C. 612 (24 S. E. 484, 54 Am. St. R. 741); In re Graham, 22 Fed. Supp. 233; Davis Loan Co. *v.* Blanchard, 14 La. App. 671 (129 So. 413); Home Finance Co. *v.* Padgett (La.), 54 So. 2d 813; People *v.* Coleman, 337 Mich. 247 (59 N. W. 2d 276); Cockle *v.* Flack, 94 U. S. 344 (23 L. ed. 949); Missouri, Kansas &c. Trust Co. *v.* Krumseig, 172 U. S. 351, 356 (19 Sup. Ct. 179, 43 L. ed. 474); Jernigan *v.* Rainwater Co., 196 Ark. 251 (117 S. W. 2d 18).

Applying the rules here that the name by which the transaction is called is immaterial, and that the trior of facts is authorized to determine from all pertinent evidence submitted whether or not the charge alleged is one made in good faith for an additional consideration, or whether it is but a device to side-step the mandate of the law, the court here might properly consider such facts as these: the lender, who was agent for an insurance company, required that the insurance be taken out through himself as such agent and with the company selected by him; he received 85% of the premium cost as his commission; no claims were ever made against the insurance company during the entire time he was in business; the fund from which a claim would be paid was a fund belonging to himself rather than to the insurance company; it was impossible for prospective borrowers to obtain a loan from the defendant without taking out both life insurance and health and accident insurance in accordance with his terms, and the cost of such insurance was 34% of the face

amount of the three-month, and 42% of the face amount of the four-month, loans. Although the evidence would have been stronger for the State had the facts justified it and had the evidence shown that the insurance was in excess of a feasible amount that would justify a borrower in incurring this expense in order to obtain a loan, this fact and the others herein set out are such as to authorize the finding that this was not a good-faith insurance transaction, but, on the other hand, was a contrivance or device intended to exact usury.

Code § 25-9902 makes a violation of Code § 25-301 a misdemeanor; and a violation of Code § 57-117 is made a misdemeanor by the provisions of Code § 57-9901. The evidence was ample to sustain the finding that the plan put into effect by the defendant in connection with the transactions set out in counts 2, 3, and 4 of the indictment represented a contrivance or device to evade the usury laws of this State and thereby charge a rate of interest far in excess of 5% per month authorized under Code § 57-117 for the use of money.

■ The contention that a defendant cannot be convicted on a stipulation of facts agreed to and executed by him is not well taken. Under Code § 38-114, a solemn admission in judicio is, at least until withdrawn after notice, conclusively binding upon the parties thereto. *United States Fidelity &c. Co.* v. *Clarke,* 187 *Ga.* 774 (3), 783 (2 S. E. 2d 608), holds that an agreed statement of facts upon which the case is to be tried is such an admission in judicio. Equally, in criminal cases, the defendant's statement is also a solemn admission in judicio and direct evidence of the fact stated. *Hargroves* v. *State,* 179 *Ga.* 722 (4) (177 S. E. 561) ; *Dumas* v. *State,* 62 *Ga.* 58 (3) ; *Barbour* v. *State,* 66 *Ga. App.* 498 (18 S. E. 2d 40). In 2 Am. Jur. 370, § 7, the following is stated: "The submission of an agreed case or an agreed statement of facts in an action . . . is not necessarily limited to civil actions. In criminal proceedings, in both State and Federal courts, the practice has been sanctioned of submitting misdemeanor prosecutions arising from violations of regulatory statutes to the court upon agreed statements of fact." See H. Hackfeld & Co. *v.* U. S., 197 U. S. 442 (25 Sup. Ct. 456, 49 L. ed. 826) ; Gibson *v.* Town of Harrison, 69 Ark. 385 (63 S. W. 999, 54 L. R. A. 268) ; District of Columbia *v.* Lee, 35

App. D. C. 341 (21 Ann. Cas. 973) ; State *v.* Martin, 230 Mo. 1 (129 S. W. 931, 139 Am. St. R. 628) ; Keller *v.* State, 12 Md. 322 (71 Am. D. 596) ; Davidson *v.* State, 77 Md. 388 ,(26 Atl. 415).

The judgment of the trial court finding the defendant guilty under all counts is authorized by the evidence.

*Judgment affirmed. Gardner, P. J., and Carlisle, J., concur.*